## Burt Cooley, Plaintiff-Appellant, v. Molly Makse d/b/a Makse's Tavern and Illinois Valley Realty Company, Inc., Defendants-Appellees.

### Gen. No. 11,767.

Second District, First Division.

January 23, 1964.

Rehearing denied March 6, 1964.

Kevin D. Kelly, of LaSalle, for appellant.

Herbolsheimer and Lannon, of LaSalle, for Molly Makse, defendant-appellee and co-party separate appellant. Zwanzig, Thompson & Lanuti, of Ottawa, for defendant-appellee, Illinois Valley Realty Company, a Corporation.

SMITH, J.

Plaintiff sustained injuries from a fall over some loose bricks in a brick walk leading from some concrete steps at the front door of the tavern a distance of some 18 feet to the city sidewalk. He sued Molly Makse as the operator of the tavern and Illinois Valley Realty Company as the owner of the tavern property. The trial court directed a verdict in favor of the defendant owner and plaintiff appeals from the judgment entered on such verdict. The jury returned a verdict against Molly Makse for $25,000 and she appeals from the judgment entered on that verdict.

Since the basic issue in this case is the liability of either or both of the defendants, if any, where the injury occurred upon a municipally owned easement, a word picture of the building, the situs and the property lines is necessary. The tavern was a frame build-

ing situated on the Northeast corner of an intersection in the City of La Salle. It sat back about 12 feet from the inner edge of the sidewalks paralleling the streets. The front entrance to the building was a door cut diagonally across the Southwest corner of the building. Two concrete steps of circular design provided descent from the floor line of the building to the outside ground level. From these steps a brick walk extended in a Southwesterly direction a distance of about 18 feet to intersecting sidewalks near the street curb line. Along this sidewalk was a large tree whose roots had heaved up the walk at or near the place where the plaintiff fell. Between the tree and the front entrance the walk was in bad condition and had been so for a long time, perhaps as long as seven years. The evidence does not show who originally constructed this walk. It does show that neither the tenant of the building, the owner nor the city had repaired it prior to the accident. The tavern building was built flush with or within six inches of the city's easement. The city had made no use of its easement between the building and the sidewalks near the street. The plaintiff fell some two or three feet from the concrete steps and on the city owned easement.

The plaintiff alleged in his complaint that he fell on property occupied by the defendant Makse and owned by the defendant Illinois Valley Realty Company. The evidence clearly does not support this allegation. This the plaintiff tacitly admits as he sought during the trial to amend his declaration to charge that the injury occurred "on the brick walk adjacent and contiguous to the steps at the front entrance to said tavern building on said premises." The trial court refused to permit the amendment. It is at once apparent that our first consideration must be directed to how far beyond the premises over which the defendants had ownership or control does the duty to

provide invitees with a safe means of ingress and egress extend, if at all. Cases where the injury occurred on the premises are not factually helpful. Cases where the landlord reserved a common areaway for the use of multiple tenants are not factually helpful. Cases where the owner or occupier was the author of the instrumentality which caused the injury even though it occurred in a public way are not factually helpful. None of them fit the factual picture before us. It is unequivocally clear that this brick walk was a means of ingress and egress to the tavern building. It provided access to the front door. It was patently so used for many years with the full knowledge and approval of both the tenant and the owner. It has no other useful purpose. It is equally clear that its defective condition was not affirmatively created by either the tenant or the owner but was occasioned by natural deterioration aided to a degree by the natural growth of the tree and its roots. The injury to the plaintiff occurred on a part of the walk situated on the city easement. That the use of this walk is factually much different than that enjoyed by the general public in the normal sidewalk, street or public way is self evident. We find no factual parallel in any of the many cases cited in the briefs nor has our own research revealed any.

In Stedman v. Spiros, 23 Ill App2d 69, 161 NE2d 590, the defendant was the lessee of the lodge at Starved Rock State Park and other concessions. Outside the door of the lodge was a patio from which extended a concrete sidewalk. While standing on a grassy point some 15 feet away from the sidewalk and some 50 feet from the lodge the ground on which the plaintiff was standing gave way and he fell over a precipice and sustained serious injury. In affirming the trial court's judgment in favor of the defendant lessee the court said:

28

> "In the present case, the area upon which plaintiff ventured forth and met severe injuries was not occupied or controlled by the defendant and was not under his jurisdiction, but rather that of the State of Illinois. To hold the defendant liable upon the facts stated in the Amended Complaint would be a radical departure from existing law in this State which we regard as sound."

In enunciating this well recognized rule, which we do not delimit or repudiate, the court further said:

> "The issue presented here is how far beyond the premises over which the defendant had possession and control does defendant's duty of due care extend to provide a reasonably safe means of ingress and egress for plaintiff. Clearly, if the brink of the precipice were a step or two from the defendant's door, or from the stone patio to which defendant's door opened, we would have a different case than is now presented to us."

Admittedly this statement was made arguendo rather than decidendo. Nevertheless, it does impel us to pause and take a closer look.

In Viands v. Safeway Stores, Municipal Court of Appeals for the District of Columbia, 107 A2d 118 small boys congregated near the front door of the store on the public sidewalk with their wagons to carry away groceries of the customers as they left the premises. The boys were there with the knowledge of the defendant but not at its invitation, direction or request. Plaintiff took one step out of the doorway, tripped and fell. In holding the defendant liable the court said:

> "And it has been specifically held that the duty to properly maintain approaches to an invitor's property is not to be determined by the exact

29

boundaries of the premises, and that such duty does not end at the door through which the invitee makes his exit. Cannon v. S. S. Kresge Co. 233 Missouri App 173, 116 SW2d 559."

The court did observe that the plaintiff still had one foot in the doorway at the time she tripped. Through this factual technicality it could be said that the virginity of the rule against liability for injuries on property not owned or occupied by the defendant was preserved. We think the philosophy of that case goes beyond a holding that the mere presence of a foot, size unknown, on the property of the defendant imposes a liability where the causa de injuria and the injury occurred on the public sidewalk.

██ Let us scrutinize once again the walk in question and the use made of it by the defendants. The only effective use of the front door to this building by the landlord, tenant and their invitees was by the use of and over this walk. The normal use of the door presupposed the use of the walk. The door, albeit mutely and silently, beckoned to all who had business in the tavern to enter and to leave by this route. Implicit in that invitation was the representation that it might be safely exercised. We think the duty of the defendants to use due care not to negligently injure invitees upon their premises carries with it a corollary duty to get such invitees safely on or off their premises. It is abundantly clear from the pictures that injuries to invitees might reasonably have been anticipated from the condition of this walk, particularly after dark. The defendants, whether lawfully or not, had assumed the right to use, enjoy and employ the sidewalk as a necessary adjunct of their possession, control and ownership of the tavern building. The exercise of that right necessarily incubates the duty to see that it may be safely exercised by their invitees. Under the peculiar facts of this case

30

and within the clear implications of Stedman and Viand the duty of the defendants in this case to their invitees extends beyond naked and precise property lines. Having prescribed the route to their invitees for ingress and egress to and from their building, it was their duty to properly illuminate, give adequate warning of, or cause to be repaired a known, dangerous condition.

██ ██ We perceive no distinction between the liability of the landlord and the liability of the tenant in this case. They either hang from the same limb or they do not hang at all. The liability of a landlord for defective conditions of the leased property at the time of the lease has been succinctly stated in Wagner v. Kepler, 411 Ill 368, 104 NE2d 231 in these words:

> "But where the owner leases property with actual or constructive notice of a defective and dangerous condition which remains uncorrected, the owner, notwithstanding the lease, is liable to strangers for injuries caused by the defect to the same extent as if he were in control and possession of the property."

It is undisputed that the defective condition of this walk existed at the time of the lease and that both the tenant and the landlord knew or should have known of its condition. We have already observed that the effective use of either the occupancy or the ownership of this property necessitated the use of this walk by business invitees of the property. That this fact was obviously known to both landlord and tenant does not appear to be debatable.

It is urged that to extend the liability of either the tenant or the landlord beyond the physical limits of the leased property is to undermine, if not destroy, recognized pre-existing legal principles. It is further suggested that to hold as we do in this case is to open

the floodgates to endless litigation and to extend liability in appropriate cases to 5 or 10 or even 100 feet from the leased property. We do not here purport to approve or to authorize any such catastrophic results. The plaintiff here is an invitee of the defendants as distinguished from a member of the general public. It may well be that the duty to repair rested with the municipality and with neither of the defendants if this record correctly delineates the property lines. This should not and does not exculpate these defendants from the duty to properly illuminate the area or warn of the existence of the known danger to those likely to act upon the invitation of the defendants to use the way. The normal use of the entrance by an invitee presupposes the normal use of the situs of this accident. Adjacent as it was to the entrance and having extended the invitation to use that entrance it was incumbent upon the invitors to see that that invitation could be safely exercised by their invitees. It seems clear to us that a duty rested with the defendants to make known to their invitees a known dangerous condition either through adequate illumination, proper warning or otherwise. Whether their failure to do so is the conduct of reasonably prudent persons is characteristically a question of fact for the jury on the record before us.

In view of what we have here said other questions discussed in the briefs become immaterial. It is patent that both judgments must be reversed and the cause remanded to the trial court with directions to permit the plaintiff to amend his complaint to conform to the proof and for a new trial against both defendants in conformity with the views herein expressed.

Reversed and remanded with directions.

McNEAL, P. J. and DOVE, J., concur.